GUILLERMO ATILES MORÉU, MANAGER OF THE STATE INSURANCE FUND, Petitioner, v. INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent; JUAN DE LOS SANTOS MONGE, Uninsured Employer.

No. 361.—Argued April 9, 1947.—Decided June 24, 1947.

*A. de Jesús Matos, A. Sandín del Manzano,* and *I. Marrero* for the petitioner. *Víctor J. Vidal González* for the beneficiary of the deceased workman. *Luis M. Pagán* for the employer, Juan de los Santos Monge.

Mr. Justice Marrero delivered the opinion of the Court.

From the records of this proceeding the following uncontroverted facts appear:

Félix Rexach Ríos owns a quarry situated in the place known as Seboruco, in Santurce; Juan de los Santos Monge owns a motor truck; and Ramón Fournier a cemetery. Juan de los Santos Monge agreed with Félix Rexach Ríos to extract earth or gravel (*zahorra*) from the quarry owned by the latter, and to pay for it at the rate of 50 cents for each truckload. Fournier in his turn agreed with De los Santos Monge to pay the latter $4.50 for each truckload of earth (*zahorra*) delivered to him at the cemetery. The extraction of the earth, the loading of the truck, and the driving of the vehicle from the quarry to the cemetery were made wholly on the account of De los Santos Monge, that is to say, the latter paid 50 cents for the earth at the quarry and collected $4.50 for each truckload of earth delivered at the cemetery, he paying as wages, on each truckload, at the rate of 25 cents to the laborers and 50 cents to the driver. On August 1, 1945, between 9:30 and 10:00 A.M., four laborers were extracting earth under the conditions already stated, from the quarry of Rexach on the account of De los Santos Monge in order to transport it to the Fournier cemetery. While this was being done a landslide occurred and several workmen were injured, one of them being Escolástico Febres, who died in consequence of the injuries received by him. Félix Rexach Ríos and Ramón Fournier were employers insured with the State Insurance Fund but not so Juan de los

Santos Monge, although he was bound to take such an insurance in view of the number of workmen employed by him. Section 18 of Act No. 45 of April 18, 1935 (Laws of 1935, pp. 250, 296).

The only question to be determined in this proceeding, therefore, is whether in view of the facts stated above Ramón Fournier, in his capacity as an insured employer, answers under his insurance for the accident involving Escolástico Febres. Since De los Santos Monge was an uninsured employer, the Manager of the State Insurance Fund transferred the case to the Industrial Commission [1] and the latter invoking our decisions in *Montaner, Mgr.,* v. *Industrial Commission,* 57 P.R.R. 263, and *Montaner, Mgr.,* v. *Industrial Commission,* 59 P.R.R. 284, held that since Juan de los Santos Monge was an uninsured employer, notwithstanding the fact that he was bound to take the insurance, and since he was an independent contractor, Ramón Fournier, who was an insured employer, answered for the accident under his insurance. Against that decision of the Industrial Commission which the latter refused to reconsider, the Manager of the State Insurance Fund has instituted a proceeding for review pursuant to § 11 of Act No. 45 of 1935, *supra,* as amended by Act No. 121 of May 2, 1940 (Laws of 1940, p. 728).

 The petitioner contends that in this case no responsibility attaches to Fournier, since the relation of independent contractor with regard to an insured employer arises only when there is a contract between the principal and the independent contractor whereby the employer delegates to the independent contractor and the latter undertakes to perform or execute a part of the work, enterprise, business, or job in which the principal employer ordinarily engages, and the relation of employer and workman can not arise between an employee of the alleged independent contractor and the

[1] See § 15 of Act No. 45 of 1935, as amended by Act No. 162 of May 14, 1943 (Laws of 1943, p. 524).

principal employer, where, as happens in this case, a mere sales transaction exists between the contracting parties. The contention of the manager is correct.

In *Montaner, Mgr., v. Industrial Commission,* 57 P.R.R., *supra,* the West India Oil Company engaged Antonio Rivera to do some soldering work on a gasoline tank used by its sales agent in the town of Morovis. Rivera went to do the work assisted by a nephew and a son of his, and when he applied the torch in order to make the soldering the tank exploded, causing the death of the nephew. The conclusion was reached that the insurance of the West India Oil Company was answerable, since Rivera was an independent contractor rendering services for the company and was not insured with the State Fund.

In *Montaner, Mgr., v. Industrial Commission,* 59 P.R.R., *supra,* Andrés Ortiz Vélez was a workman employed by Pablo Pagán, who leased a truck owned by the latter to José Vives for the transportation of sugar cane from a ward (*barrio*) of the Municipality of Utuado to a crane of the Central Cambalache located in another ward. Ortiz Vélez met with an accident while working in Pagán's truck in the transportation of cane to Central Cambalache. It was held that the latter, being an insured employer, was liable on its policy, since Vives and Pagán were not insured and were independent contractors thereto.

In the *Montaner* case last cited, which covered two proceedings, it was also said that Angel Valle worked as a helper in a truck belonging to Martín Linares, an uninsured employer. The latter operated two trucks in the transportation of cane and contracted with Juan Estades for the transportation of sugar cane from the plantation of Estades to Central Los Caños. The truck carrying the cane of Estades was overturned, causing the death of Angel Valle. It was held that Martín Linares was an independent contractor of Juan Estades and that since the former was not insured but Estades was, the latter was responsible.

The brief recital which we have made of the facts involved in the two cases cited above, readily shows that they involved the performance of services by the independent contractor for the benefit of the insured employer, that is, in both cases the three independent contractors mentioned had contracts of lease of services with the owners of the business or enterprise, Rivera with West India Oil Company, Vives and Pagán with Central Cambalache, and Linares with Juan Estades. It will also be noted that the services performed by each of the independent contractors were connected with the occupation, industry, or business of the employer who was insured with the State Insurance Fund.

In the present proceeding, however, the evidence fails to show that Juan de los Santos Monge had agreed to perform any work for the benefit of Ramón Fournier in connection with the occupation, industry, or business of the latter. Here, it is merely agreed between De los Santos Monge and Fournier that the latter would pay to the former $4.50 for each truckload of earth or gravel (*zahorra*) delivered at the cemetery. There was not at all any contract of lease of services on the part of De los Santos Monge in favor of Fournier. There was merely one or several contracts of sale. That being so, the doctrine laid down in the two cases of *Montaner, Mgr.*, v. *Industrial Commission* already cited is not applicable herein.

On the other hand, none of the cases from the continental United States which we have examined in which application has been made of the same principle upheld by the aforesaid *Montaner* cases, involved sales contracts. We rather note that they involve contracts of lease of services in favor of the insured employer.

If § 19 of Act No. 45 of 1935 (Laws of 1935, p. 296), and the definition of "contractor" set forth in the cited case from volume 57, at p. 268, are examined it will be noted that according to those authorities a contract is required

for the execution of work, the performance of some service by the so-called uninsured independent contractor for the benefit of the owner covered by the insurance. Here, we repeat, was not involved the rendering of such services, the performance of any work by Juan de los Santos Monge. There were involved only several contracts of sale.

That being so, the decision rendered by the Industrial Commission on June 5, 1946, and the reconsideration which was denied on the 15th of July following, should be reversed.